UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

RALPH DONSON,

    Plaintiff,

v.                                    CASE NO. 8:16-cv-3022-T-23MAP

AIR AND LIQUID SYSTEMS, INC.,
et al.,

    Defendants.
_____/

**ORDER**

Ralph Donson sues (Doc. 2) Crane Co. for negligence, strict liability, and fraudulent inducement. Crane removed the action under 28 U.S.C. § 1442(a)(1), which allows the removal of an action against "[t]he United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office." Donson moves (Doc. 71) to remand.

**1. Colorable Federal Defense**

To remove under Section 1442(a)(1) the defendant must qualify as a "person" under the statute, must act under the direction of a federal officer at the time the defendant engaged in the allegedly tortious act, and must advance a "colorable federal defense." Also, a causal connection must appear "between what the officer has done under asserted official authority and the state prosecution." *Mesa v. California*, 489 U.S. 121, 124–25, 129–32 (1989). Donson argues that Crane fails to demonstrate a colorable federal defense. (Doc. 71-1 at 2) Crane asserts the federal

contractor defense, which is available if "(1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." *Boyle v. United Tech. Corp.*, 487 U.S. 500, 512 (1988).

*Dorse v. Eagle-Picher Indus. Inc.*, 898 F.2d 1487, 1489 (11th Cir. 1990), extends *Boyle,* which concerns a design defect, to a failure–to–warn:

> [In a] 'failure to warn' case, *Boyle's* two-pronged analysis guides the court. The first prong, that the case concern an area of uniquely federal interest, is similarly satisfied in this failure to warn case. As in *Boyle's* design defect case, the procurement of asbestos . . . for naval ships is undeniably an area of uniquely federal interest. Having satisfied this threshold requirement, the court must address the more difficult question of whether a significant conflict exists between an identifiable federal policy and the operation of state law.

The three-part *Boyle* inquiry "elaborates the 'significant conflict' prong of the test and the scope of the displacement of state law." *Glassco v. Miller Equipment Co., Inc.*, 966 F.2d 641, 642 (11th Cir. 1992).

Other circuits directly address a failure to warn claim:

> a defendant may not defeat a state failure-to-warn claim simply by establishing the elements of the government contractor defense with respect to a plaintiff's design defect claim . . . when state law would otherwise impose liability for a failure to warn, that law can be displaced when the contractor can show that: (1) the government exercised its discretion and approved certain warnings; (2) the contractor provided the warnings required by the government; (3) the contractor warned the government about dangers in the equipment's use that were known to the contractor but not to the government.

*Oliver v. Oshkosh Truck Corp.*, 96 F.3d 992, 1003-04 (7th Cir. 1996).

> To establish [the government contractor] defense in the context of plaintiffs' failure-to-warn claims, [the defendant will] ultimately have to prove that (1) the Navy exercised its discretion and approved certain warnings for [the defendant's] products, (2) [the defendant] provided the warnings required by the Navy, and (3) [the defendant] warned the Navy about any asbestos hazards that were known to [the defendant] but not to the Navy. *See Getz v. Boeing Co.*, 654 F.3d 852, 866 (9th Cir.2011); accord *Tate v. Boeing Helicopters*, 140 F.3d 654, 658–60 (6th Cir.1998); *Oliver v. Oshkosh Truck Corp.*, 96 F.3d 992, 1003–04 (7th Cir.1996).

*Leite v. Crane Co.*, 749 F.3d 1117, 1123 (9th Cir. 2014).

Crane asserts a colorable federal defense. Anthony D. Pantaleoni, Vice-President of Environment, Health and Safety for Crane, states that "[t]he manufacture of equipment for use on Navy vessels was governed by an extensive set of federal standards and specifications . . . . All equipment by Crane Co. to the Navy was built in accordance with the Navy specifications." (Doc. 1 at 77) Rear Admiral David P. Sargent Jr., who "had overall responsibility for all matters relating to both the technical and programmatic details of [the Navy's ships]," states that "[t]he Navy maintained the responsibility to develop . . . standards for the manufacture and supply of equipment used in . . . ships. Specifications . . . were drafted, approved and maintained by the Navy . . . only the Navy could make changes or modifications to those specifications." (Doc. 1-2 at 39) Crane's equipment purportedly conformed to the Navy's specifications. Rear Admiral Samuel A. Forman, "a licensed professional engineer (mechanical) with extensive operational experience in [ships]," states that:

> the Navy's programs in these areas [industrial hygiene and occupational health] have paralleled, and at times led . . . asbestos-related issues in particular. The Navy's knowledge in the areas of asbestos and associated health conditions has been quite complete when compared to available knowledge over time, and at least by the early 1940s, the navy had become a leader in the field of occupational medicine relating to . . . asbestos dust inhalation exposure.

(Doc. 1-7 at 213) Sargent contends that the Navy's specifications governed labeling and product manuals, both of which the Navy reviews and approves. (Doc. 1-2 at 38, 52)

To establish federal-officer jurisdiction Crane's defense must appear plausible. *Mangin*, 91 F.3d at 1427 (explaining that a federal defense's "ultimate validity is not to be determined at the time of removal"). In summary, Crane asserts that the Navy provided exact specifications to Crane and dictated the content of any label or warning affixed to equipment.

**2. Causal Connection Requirement**

Donson alleges that Crane fails to establish a causal connection between the Navy's directive and Crane's failure to warn. (Doc. 71-1 at 6). "In a civil suit such as this, it is sufficient for the defendant to show that his relationship to the plaintiff 'derived solely from [his] official duties.'" *Mangin v. Teledyne Continental Motors*, 91 F.3d 1424, 1427-28 (11th Cir. 1996). Crane's experts state that the Navy exercised detailed supervision over the design and the manufacture of Crane's products and the label and warning attached to Crane's products. Crane meets the causal connection requirement because Crane's relation with Donson derived solely from Crane's official duty for the Navy.

**3. Federal-State Conflict**

The government contractor defense applies where "a significant conflict exists between an identifiable federal policy and the operation of state law." *Dorse*,

898 F.2d at 1489.  Crane alleges an inability to comply simultaneously with state and federal directives because the Navy (1) required the use of asbestos, (2) governed warnings supplied with the equipment, and (3) banned an asbestos warning. According to Crane, contractors were strictly constrained by Navy requirements with priority over conflicting state requirements.

**4. Asbestos Warnings**

Donson argues that:

> The defendant has not provided a good faith foundation to argue that it was unable to comply with both its contractual obligations with the Navy and the state duty of care . . . . Crane Co. has produced no evidence showing that it was unable to comply with both the Navy's specifications and Florida's duty to warn . . . the U.S. Navy did not prohibit its suppliers from affixing warning labels to its equipment and products . . . . The defendant has failed to show that naval policy would have prevented it from complying with state law . . . . The Navy did not implement specifications that absolved Crane Co. of its state law duty to warn.  It is clear that the choice not to warn was the defendant's.

(Doc. 71-1 at 6-7)

"[The defendant] need not prove that the Navy would have forbidden it to issue asbestos warnings had [the defendant] requested the Navy's approval . . . the government contractor defense isn't limited to 'instances where the government forbids additional warning or dictates the precise contents of a warning.'" *Leite*, 749 F.3d at 1123-24; *accord Ruppel v. CBS Corp.*, 701 F.3d 1176, 1185 n.2 (7th Cir. 2012) (Flaum, J.).

> The plaintiffs suggest that the defendants need to show that the Navy actually prohibited asbestos warnings to establish a 'causal nexus' at the removal stage. I disagree. 'Just as requiring a 'clearly sustainable defense'

- 5 -

> rather than a colorable defense would defeat the purpose of the removal statute . . . so would demanding an airtight case on the merits in order to show the required causal connection . . . . All a defendant needs to do to show a causal nexus is to establish that the plaintiff's claims arise from the defendants' performance of their duties under their contract with the Navy.

*Marley v. Elliott Turbomachinery Co., Inc.*, 545 F.Supp.2d 1266 (S.D. Fla. 2008) (Jordan, J.)

The current inquiry is "purely jurisdictional, and neither the parties nor the district courts should be required to engage in fact-intensive motion practice, pre-discovery, to determine the threshold jurisdictional issue." *Cuomo v. Crane Co.*, 771 F.3d 113, 116 (2d Cir. 2014) (Lynch, J.). "The inquiry here is only whether [Crane Co.] has advanced a colorable federal defense (including an assertion that he complied with all his federal law obligations), not whether his defense will [succeed]." *Magnin v. Teledyne Continental Motors*, 91 F.3d 1424 (11th Cir. 1996).

## CONCLUSION

Because Crane's removal under the federal-officer removal statute is proper, the motion (Doc. 71) to remand is **DENIED**.

ORDERED in Tampa, Florida, on January 9, 2017.

_____
STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE